NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1424

COMMONWEALTH

vs.

ROBERT BLANCHETTE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After the defendant, Robert Blanchette, was charged with carrying a loaded firearm without a license, he moved to suppress evidence seized from the vehicle that he was driving at the time of his arrest.  The defendant argued that the search of his car was unlawful because police officers failed to follow the inventory policy.  After an evidentiary hearing, a judge of the District Court denied the motion to suppress.  The defendant also filed a separate motion to dismiss on speedy trial grounds, which was also denied.[1]  Thereafter, the defendant entered into a

---

[1] The defendant also filed a motion for reconsideration of his motion to suppress and motion to dismiss.  A hearing was held, and the motion was denied.  The defendant did not appeal from the motion for reconsideration and it is not before us.

conditional plea agreement, pursuant to Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019), pleading guilty to possession of a loaded firearm without a firearm identification (FID) card, in violation of G. L. c. 269, § 10 (n), and carrying a firearm without a FID card in violation of G. L. c. 269, § 10 (a), while reserving his right to appeal from the denial of both his motion to suppress and his motion to dismiss.

Background.  We summarize the facts as they could have been found by the judge after an evidentiary hearing on the motion to suppress, reserving certain facts for later discussion.  See Commonwealth v. Lewis, 106 Mass. App. Ct. 343, 344 (2025).

On December 16, 2021, at approximately 10:00 A.M., a Haverhill police officer pulled over the defendant after receiving a "be on the lookout" (BOLO) for the defendant in response to a reported incident of domestic violence.  The BOLO, which had been issued approximately thirty minutes prior to the stop, named the defendant, described the model and registration of the vehicle he was likely driving, and stated that there was probable cause to arrest the defendant.  It also warned that the defendant likely had a firearm in the vehicle.  Once backup officers arrived, they approached the vehicle with weapons drawn out of concern for their safety.  The defendant, who was seated

2

in the driver's seat, was ordered out of the vehicle, pat frisked, and placed under arrest for domestic assault and battery. During the patfrisk, keys were seized from the defendant's pocket. The passenger of the vehicle was also removed and placed under arrest after police learned that he had outstanding warrants.

Because the vehicle was partially blocking a busy road with no driver available, police decided to have it towed and, pursuant to the Haverhill police vehicle inventory policy (inventory policy), conducted a search of the vehicle. During the inventory search, a police officer used a key seized from the defendant's pocket to unlock and open the glove box where he located a loaded firearm.

After the testimony was completed, the motion judge provided detailed oral findings of fact on the record, concluding that the stop of the defendant's car was consistent with the information provided in the BOLO, that the defendant was lawfully arrested for a charge of domestic violence, and that his passenger was also arrested on outstanding warrants. The judge found that the defendant's car was partially blocking the roadway, and that the officers acted lawfully when, before having it towed, they inventoried the defendant's vehicle and discovered a loaded firearm in the locked glovebox. In a

3

separate ruling, the motion judge denied the defendant's motion to dismiss for violation of his right to a speedy trial.

Discussion. 1. Motion to Suppress. "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of his [or her] ultimate findings and conclusions of law" (quotation and citation omitted). Commonwealth v. Goncalves-Mendez, 484 Mass. 80, 83 (2020).

a. The stop of the defendant's vehicle and the seizure of the defendant's keys. First, the defendant argues that, when the officers approached his vehicle with guns drawn, they used a degree of force disproportionate to the circumstances precipitating his arrest. We are not persuaded. "[A]n approach with drawn guns is generally thought excessive in the absence of any suggestion that the defendant is armed or other circumstances suggesting the possibility of violence." Commonwealth v. Santiago, 93 Mass. App. Ct. 792, 795 (2018), quoting Commonwealth v. Fitzgibbons, 23 Mass. App. Ct. 301, 308 (1986). Here, the officers were responding to a report of domestic violence and were made aware that the defendant was believed to be carrying a firearm. Given that the police suspected the defendant of committing a violent crime less than an hour before the stop, and that they were aware that the

4

defendant was likely carrying a firearm, the circumstances justified their approach of the defendant's vehicle with guns drawn.

Second, the defendant argues that the judge erred in finding that the seizure of the keys located during the patfrisk was lawful. Pursuant to G. L. c. 276, § 1, a search incident to arrest can be made for the purpose of removing any weapon an arrested person might use to resist arrest or to escape. The defendant does not challenge that probable cause existed to place him under arrest. Rather, he contends that the judge committed clear error because the key fob found on his person was not a potential weapon. A review of the motion hearing transcript does not support the defendant's contention. Here, the officer testified that a key or a set of keys were seized from the defendant. There is no testimony from any witness to support the defendant's contention that the police seized a plastic key fob rather than a set of keys.[2] The seizure of the

_____

[2] Neither the direct testimony nor cross-examination of the police officer elicited evidence that the item was a key fob, rather than a set of keys. At one point during the officer's testimony, the defendant argued to the judge that, when the police officer took the keys from his person, "[t]hat's why I think Terry came into play." The judge explained to the defendant that she would hear the evidence and decide the case, but that keys could be used to stab a person. The defendant interrupted the judge and stated that the keys had a plastic housing on the key fob. This statement was not supported by evidence at the hearing.

defendant's keys was proper because keys can be used as potential weapons that an arrested person might use to resist arrest or to escape. In Commonwealth v. Blevines, 438 Mass. 604 (2003), the defendant was informed that he was being placed under arrest and keys were discovered in his pocket during a patfrisk. Id. at 605. At the motion to suppress hearing, officers did not testify that they were concerned that a key might be used as a weapon to resist arrest. The court stated that "[w]e deem such a matter self-evident and conclude that [the trooper], discovering a hard object in the defendant's rear pocket, was justified in retrieving that object as a potential weapon." Id. at 608. "A hard object found, such as keys, may be seized." Id. See Goncalves-Mendez, 484 Mass. at 83. The keys were properly seized during the patfrisk as potential weapons.

b. Inventory search. We now examine whether the inventory search of the vehicle was lawful. The defendant argues that the police officers exceeded the lawful scope of their inventory policy by using the keys obtained from the patfrisk to unlock the glove box. An inventory search can serve three legitimate, noninvestigatory purposes. A legitimate search can "protect the vehicle and its contents from the threat of theft or vandalism; . . . protect the police and the tow company from false claims;

6

and . . . protect the public from dangerous items that might have been left in a vehicle." Commonwealth v. Davis, 481 Mass. 210, 218 (2019). "Unlike other types of searches, an inventory search is administrative, and the decision to conduct an inventory search must not be for investigatory purposes; the decision must be objectively reasonable, and the search must be conducted according to standard written procedures." Id. at 219.

At the motion to suppress stage, the Commonwealth has the burden to prove that the inventory search was done for a legitimate purpose and not for an investigatory purpose. See Commonwealth v. Rosario-Santiago, 96 Mass. App. Ct. 166, 175 (2019). At the motion hearing, the Commonwealth introduced a written copy of the Haverhill police inventory policy, which directs that officers are to complete an inventory of "[t]he passenger compartment, including the glove box, center console, and any unlocked freestanding containers found therein." It further provides that a "locked, attached container, glove box, or trunk may be opened and inventoried if there is a key available or the opening can be obtained without causing damage to the vehicle."

The defendant contends that even if the keys were properly removed from the defendant's person during the patfrisk, the

glove box could not be opened because the keys cannot be considered "available" for purposes of the Haverhill inventory policy. The defendant offers no authority to support his contention that the inventory policy should be so narrowly construed. Officer Graham testified that he retrieved the key that was obtained from the patfrisk and unlocked the glove box where the loaded firearm was located. Where the defendant was lawfully arrested and his keys lawfully seized during a search incident to that arrest, we cannot say that the keys were not "available" during the inventory search. Accordingly, the evidence supported the judge's finding that the search was performed properly in accordance with the inventory policy.

2. Motion to dismiss based on constitutional right to a speedy trial. "Both the Sixth Amendment [to the United States Constitution], incorporated through the Fourteenth Amendment [to the United States Constitution], and art. 11 [of the Massachusetts Declaration of Rights] guarantee criminal defendants the right to a speedy trial. We interpret art. 11 through the lens of Sixth Amendment analysis." Commonwealth v. McNair, 98 Mass. App. Ct. 750, 754 (2020), quoting Commonwealth v. Dirico, 480 Mass. 491, 505 (2018). "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary

from 'presumptively prejudicial' delay." Commonwealth v. Wallace, 472 Mass. 56, 60 (2015), quoting Doggett v. United States, 505 U.S. 647, 651-652 (1992). "Once a defendant has established presumptive prejudice, courts apply the four-factor Barker test to evaluate whether the defendant's constitutional right to a speedy trial has, in fact, been violated." Commonwealth v. Butler, 464 Mass. 706, 710 (2013). "Under the Barker test, a reviewing court weighs the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and prejudice to the defendant." Dirico, supra at 506, citing Barker v. Wingo, 407 U.S. 514, 530 (1972).

Here, as to the first factor, the length of the delay was just over one year, weighing slightly in the defendant's favor. The docket entries reflect that both the Commonwealth and the defendant contributed to the pretrial delay. The time period between the defendant's arraignment and trial totaled 386 days and the defendant does not challenge that twenty-three days of delay are attributable to him. As to factor two (the reason for the delay), there is no evidence to support, nor does the defendant allege, that the Commonwealth intentionally sought to delay the trial. Although the Commonwealth did fail to affirmatively request a ballistician report, thereby causing some delay, this amounts to negligence at worst. As to factor

9

three, the record does not support a finding that the defendant pressed heavily for the case to go to trial.  Finally, there has been no showing by the defendant that he suffered prejudice as to his inability to "adequately . . . prepare his case," and factor four is accordingly unsatisfied.  <u>Dirico</u>, 480 Mass. at 508, quoting <u>Barker</u>, 407 Mass. at 532.  Considering the <u>Barker</u> factors as a whole, we discern no violation of the defendant's constitutional right to a speedy trial.[3]

> <u>Orders denying motion to suppress and motion to dismiss affirmed</u>.
>
> By the Court (Walsh, Hershfang & D'Angelo, JJ.[4]),
>
> Clerk

Entered:  July 15, 2026.

---

[3] We note that the defendant submitted additional materials after argument.  The panel rejects the submission for failure to comply with Mass. R. A. P. 16, as appearing in 481 Mass. 1628 (2019).  It contains argument, and we do not consider it except for the portion which states, "The Appellant would also like to direct the court to pp. 42-43, of his brief, which presents the argument relative to the BOLO as the basis of the stop of Mr. Blanchette's vehicle, an issue that arose during oral argument."

[4] The panelists are listed in order of seniority.

10